IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
KATHLEEN STEWART,              )
                               )    2:10-cv-1648-GEB-KJN
          Plaintiff,           )
                               )
     v.                        )    ORDER GRANTING SUMMARY
                               )    JUDGMENT
CINTAS CORPORATION NO. 3,      )
                               )
          Defendant.           )
_____)
```

Defendant moves for summary judgment on all claims in Plaintiff's Complaint. (ECF No. 21.) Plaintiff's claims concern Defendant's termination of her employment with Defendant. For the reasons stated below, Defendant's motion will be granted.

## I. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust and Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When the defendant is the moving party and is seeking summary judgment on one or more of a plaintiff's claims,

> [The defendant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted). If the moving party satisfies its initial burden, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation and internal quotation marks omitted). The "non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (citation and internal quotation marks omitted).

Further, Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

> Because a district court has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment, . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

Simmons v. Navajo Cnty., Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010) (citation and internal quotation marks omitted).

Evidence must be viewed "in the light most favorable to the non-moving party," and "all reasonable inferences" that can be drawn from the evidence must be drawn "in favor of [the non-moving] party." Nunez v. Duncan, 591 F.3d 1217, 1222-23 (9th Cir. 2010).

## II. UNCONTROVERTED FACTS

Defendant "processes, distributes, and delivers corporate-identity work uniforms as well as facility services products[.]" (Statement of Undisputed Facts ("SUF") ¶ 1.) Defendant "employs Service Sales Representatives ('SSR') to service its customers by delivering clean uniforms and other industrial products to a customer's business and also picking up soiled garments for laundry, repair or replacement." Id. ¶ 2. "Typically, each SSR is assigned a particular customer route that he or she services each week in order to develop continuing customer relationships with [Defendant's] customers." Id. "Plaintiff was employed by [Defendant] as an SSR, servicing a route, from September 8, 2003 until August 3, 2009." Id. ¶ 8. In 2006, Plaintiff "transferred

. . . to [Defendant's] Sacramento, California facility #622 (hereinafter 'Location 622')[.]" Id. ¶ 10.

"Plaintiff suffers from debilitating migraines . . . ." (Pl.'s Additional Undisputed Facts ("AUF") ¶ 2.) Plaintiff's migraines occasionally made her late for work because she had to wait for her medication to effectively minimize her symptoms. Id. "On November 20, 2008, Plaintiff made a request to [Defendant's] third party administrator for leave under the [Family Medical Leave Act ("FMLA")] and" in "a letter dated February 13, 2009," Plaintiff's "request for intermittent FMLA leave [was] approved from January 26, 2009 through January 26, 2010." (SUF ¶¶ 28, 30.) "Prior to making any formal request for FMLA leave . . . , [Defendant] had permitted Plaintiff to arrive late to work on account of her migraines." Id. ¶ 31.

"In February 2009, Plaintiff met with [Jacqueline] Mack,[ the Human Resource Manager,] Grizelda Torrao, General Manager . . . at that time, Scott Wallace, Service Director, Scott Tricomo, Service Manager and Plaintiff's direct supervisor, and Elizabeth Santilli, a Regional Human Resources representative, to discuss performance deficiencies and to engage in additional dialogue related to possible accommodations." Id. ¶ 34. "At the time of the February 2009 meeting, [Defendant] had received . . . customer complaints related to Plaintiff servicing customers after they were closed or leaving product at the customer's back door." Id. ¶ 35. "During that . . . meeting, Plaintiff told [Defendant] that her tardiness was the result of migraine headaches and a change in medication from injectible form to tablet form." Id. ¶ 37. "As a solution to the customer service issues, Plaintiff proposed an accommodation [where] . . . another SSR [would] begin Plaintiff's route on days whe[n] she could not arrive at work on time and then [she would]

4

. . . meet that SSR on the route once she arrived at work." Id. ¶ 39. However, Defendant said it "didn't want to do that." (Stewart Dep. 116:25.) Consequently, Plaintiff "continued to [use her approved FMLA leave to] come in late when she experienced a migraine headache." (SUF ¶ 41.)

"Plaintiff alleges that at the February 2009 meeting Santilli told her that she would be fired if she showed up late to work again. The February 2009 meeting with Santilli is the only time Plaintiff alleges she was told she would be fired for showing up late." Id. ¶ 40. Plaintiff testified that Santilli "stated that if I couldn't come to work on time and do the job that I was hired to do, that [Defendant] did not have any other positions for me, and they would -- that it was a bad time to be out of work." (Stewart Dep. 114:23-115:1.) Plaintiff also testified that Santilli "also said there were others in the plant with worse conditions than mine that were able to make it to work on time." Id. 115:14-16. "However, Plaintiff was never disciplined for arriving late to work after the February 2009 meeting." (SUF ¶ 41.) Further, Santilli "was not involved in conducting the Re-Route" at Location 622 and she was not a "decision-maker with respect to" Plaintiff's termination when Plaintiff's route was eliminated. (Santilli Decl. ¶¶ 3-4; SUF ¶ 42.)

"Plaintiff injured her ankle on June 15, 2009 while servicing her route." (SUF ¶ 43.) "On June 16, 2009, Plaintiff filed a claim for worker's compensation based on her ankle injury." Id. ¶ 44. "During her treatment and recovery from her ankle injury, Plaintiff was relocated to [Defendant's] stockroom based on her medical restrictions but was compensated at her SSR rate of pay." Id. ¶ 45. "[T]here was nothing that

5

she requested from [Defendant] that it did not provide while her ankle was healing." Id. ¶ 48.

"In early-2009, General Manager . . . Doyle Denny, determined that seven positions needed to be eliminated in the service department due to high labor costs as a percentage of sales and other economic indicators." Id. ¶ 50. "As part of this general restructuring of the service department, [Defendant] terminated a customer service representative and a route check-in coordinator prior to July 2009. These terminations were conducted based on seniority." Id. ¶ 51. "In early-2009, [Defendant] . . . engaged in a re-route of all customer routes at the location at that time (hereinafter "the Re-Route") in order to reduce the number of routes at the location." Id. ¶ 53. Defendant "did not state that it was going to reduce SSR positions by seniority." Id. ¶ 52. Plaintiff states this fact is "disputed"; however, the deposition testimony Plaintiff cites does not support her argument. (Pl.'s Separate Statement of Undisputed and Additional Material Facts ("Pl.'s SSF") 13:10-12; Stewart Dep. 138:8-20.)

To conduct the re-route and reduce the number of routes, Defendant used a software program to create the most efficient routes. (SUF ¶¶ 54-57.) "Plaintiff admits that she was not involved in the restructuring and elimination of routes as part of the Re-Route and does not know the selection criteria." Id. ¶ 65.

Plaintiff's route was eliminated in the re-route and she "was terminated on August 3, 2009." Id. ¶ 63. Plaintiff was given a letter stating her "employment will end as a result of a reduction in force and not due to any fault of her own." (AUF ¶ 26.) At least one other route was eliminated during the re-route and that SSR was also terminated. (SUF ¶¶ 61-62.) Plaintiff states this fact is "disputed" and argues this

1  other route "was a Starbucks route and not a uniform route." (Pl.'s SSF
2  14:19-20.) However, this distinction is irrelevant and does not dispute
3  the fact since "[a]nybody assigned to run a route is considered an SSR."
4  (Denny Dep. 58:2-3.)

5     "According to [Defendant's] employee handbook[,] . . . if
6  there are Work Force Reductions, 'the company will make every reasonable
7  effort to place [employees] in other positions or departments. If this
8  isn't practical, [employees] may be terminated.'" (AUF ¶ 21.) Plaintiff
9  was not given another position because Defendant "had no open positions
10 in the location." (Denny Dep. 68:16-17.) Plaintiff argues "Defendant
11 offers no explanation as to why she could not remain in [the stockroom]
12 position[ where she was placed as an accommodation for her ankle
13 injury]." (Pl.'s SSF 11:28-12:1.) However, the deposition testimony
14 Plaintiff cites as support for her argument explains why she could not
15 remain in that position: "[T]he whole reason that she was working
16 temporarily in the stockroom was because she had twisted her ankle and
17 at that time couldn't run her route. <u>It wasn't that there was an open
18 job in the stockroom that she filled</u>." (Denny Dep. 69:13-17 (emphasis
19 added).) In addition, Tricomo also testified that "[t]here was never a
20 permanent position [in the stockroom]."(Tricomo Dep. 32:5.)

21                    **III. EVIDENTIARY OBJECTION**

22     Defendant presents evidence that the "software reconfigured
23 the routes at Location 622, and three routes were eliminated: Route 17,
24 Route 25 and Route 75." (SUF ¶ 60; Aff. Louis ¶ 8; Aff. Feller ¶ 12.)
25 Plaintiff disputes this evidence based on a document produced by
26 Defendant during discovery that details the proposed re-route; Plaintiff
27 declares: "Even though the heading of Page 1 [of the document] indicates
28 that Route 17 was eliminated, it is clear that in fact it was not

eliminated, as it still appears on Pages CI001433 through CI001435. Conversely, Route 35 was eliminated and does not appear in the new proposal." (Stewart Decl. ¶ 5; Pl.'s SSF 14:11-13.) Plaintiff argues "Roman Amudson, formerly the SSR for Route 35, who had only worked for [Defendant] one year and is not disabled, was given Route 17 after the re-route and Plaintiff was terminated." (Pl.'s SSF 14:14-17.) Defendant objects to Plaintiff's declaration, arguing it "lacks foundation, is conclusory, [and] contains impermissible opinion[.]" (Def.'s Objections to Pl.'s Evidence 21:24-27.) Defendant cites Federal Rules of Evidence 602, 701, and 702 as support for this objection. Id.

Federal Rule of Evidence 602 prescribes that a witness may not testify unless "the witness has personal knowledge of the matter." Fed.R.Evid. 602. Further, a lay witness may testify only as to those opinions or inferences which are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701. Plaintiff's declaration lacks foundation since there is no evidence that Plaintiff has personal knowledge of the matters about which she avers; nor is there evidence of Plaintiff's qualification to interpret Defendant's document. Accordingly, Defendant's objection to Plaintiff's evidence is sustained and Plaintiff's declaration is not considered.

## IV. DISCUSSION

### A. Disability Discrimination

Defendant seeks summary judgment on Plaintiff's disability discrimination claim which is alleged under the California Fair Employment and Housing Act ("FEHA"), arguing Plaintiff "fails to

8

establish a prima facie case of disability discrimination." (Def.'s Mot. For Summ. J. ("Mot.") 16:13.)

"When [considering] motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the McDonnell Douglas burden-shifting scheme as a federal procedural rule." Zeinali v. Raytheon Co., 636 F.3d 544, 552 (9th Cir. 2011) (internal quotation marks and citation omitted).

> In order to defeat a defendant's motion for summary judgment on a discrimination claim: The employee must first establish a prima facie case of discrimination. If [s]he does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the reason is pretextual[,] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Id. (citation and internal quotation marks omitted).

To establish a prima facie case of disability discrimination under FEHA, Plaintiff must show: "(1) [s]he suffers from a disability; (2) [s]he is otherwise qualified to do h[er] job; and, (3) [s]he was subjected to adverse employment action because of h[er] disability." Faust v. Cal. Portland Cement Co., 150 Cal. App. 4th 864, 886 (2007). "At the summary judgment stage, the requisite degree of proof necessary to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the evidence." Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (citation and internal quotation marks omitted).

Defendant argues Plaintiff "cannot show any causal link between her alleged disability and the subsequent termination of her employment when her route was eliminated." (Mot. 16:5-7.) Plaintiff

9

1  argues that as a result of her migraine headaches and her use of FMLA
2  leave, "she was called into a meeting with various supervisors and human
3  resource representatives and told that she must come to work at a
4  specified time, despite her need for a reasonable accommodation, or she
5  would lose her job." (Opp'n 9:1-4.) Plaintiff argues "Santilli's
6  discriminatory remarks are of significant probative value[ since] they
7  were made less than six months before Plaintiff's termination[.]" Id.
8  9:26-10:1. However, Santilli made the statement to Plaintiff in February
9  2009, at least five months before Plaintiff was terminated. (SUF 40,
10 63.) Further, Santilli "was not involved in conducting the Re-Route" and
11 she was not a "decision-maker with respect to" Plaintiff's termination.
12 (Santilli Decl. ¶¶ 3-4; SUF ¶ 42.) Plaintiff also argues that when she
13 was terminated "Defendant disregarded its own policy as to Plaintiff by
14 failing to find her another position within the company[,] . . .
15 evidencing a discriminatory motive." (Opp'n 9:10-12.) However, there is
16 no evidence indicating that Defendant disregarded its own policy;
17 rather, the evidence shows there were no openings at Location 622.
18 (Denny Dep. 69:13-17; Tricomo Dep. 32:5.) Therefore, Plaintiff has not
19 established a prima facie case of disability discrimination under FEHA.
20        Defendant also argues, "[e]ven assuming . . . that Plaintiff
21 could establish a prima facie case of disability discrimination,
22 [Plaintiff] cannot show specific and substantial evidence that
23 [Defendant's] proffered nondiscriminatory reason for terminating her
24 employment-that her route had been eliminated-is pretext for disability
25 discrimination." (Mot. 16:16-19.)
26        "To show pretext using circumstantial evidence, a plaintiff
27 must put forward specific and substantial evidence challenging the
28

credibility of the employer's motives." Vasquez v. County of L.A., 349 F.3d 634, 642 (9th Cir. 2003).

> [T]here must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions. Accordingly, the great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.

Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 361 (2000) (emphasis in original) (citation omitted).

Plaintiff argues that Defendant did "not eliminate Route 17, but Route 35 (Roman Amundson's route) . . . [and] [t]he only way Defendant could purport to justify Plaintiff's termination despite keeping Amundson was to conceal the fact that his route was eliminated as well." (Opp'n 10:22-25.) However, there is no evidence supporting Plaintiff's argument that Route 35 was eliminated instead of Route 17. Plaintiff also argues "Defendant did not comply with its statement that SSRs would be eliminated based on seniority, further demonstrating Defendant's discriminatory animus." Id. 11:1-3. However, there is no evidence that Defendant stated it would eliminate SSRs based on seniority. (SUF ¶ 52.) Further, Plaintiff argues she "demonstrated that Defendant deviated from its own policy with respect to placing her in another position when a reduction in [work]force occurs." (Opp'n 11:4-5.) However, there is no evidence Defendant deviated from its reduction in workforce policy.

Since Plaintiff has not raised a triable issue that Defendant's proffered reason for terminating Plaintiff was a pretext for prohibited discrimination, Defendant's motion for summary judgment on Plaintiff's disability discrimination claim is granted.

**B.  Failure to Accommodate and Failure to Engage in the Interactive Process**

Defendant also seeks summary judgment on Plaintiff's FEHA claims in which Plaintiff alleges Defendant failed to reasonably accommodate her and failed to engage in the interactive process, as prescribed in California Government Code section 12940, subsections (m) and (n). (Mot. 17:17-18.) Defendant argues the undisputed evidence demonstrates it accommodated Plaintiff's disabilities and engaged in the interactive process. Id. 18:7-24; 19:6-20:2.

FEHA proscribes an employer from "fail[ing] to make reasonable accommodation for the known physical or mental disability of an . . . employee." CAL. GOV'T CODE § 12940(m). "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." Scotch v. Art Institute of Cal.-Orange Cnty., Inc., 173 Cal. App. 4th 986, 1009-10 (2009).

Plaintiff argues she was denied a reasonable accommodation for her migraine headaches "when Santilli informed Plaintiff that [Defendant] would not allow her to come in later than the specified start time." (Opp'n 13:5-6.) Plaintiff also argues she was denied a reasonable accommodation for her ankle injury since she was terminated when her route was eliminated and was not allowed to continue working in the stockroom or placed in another position. Id. 13:11-17. However, the undisputed evidence demonstrates that Plaintiff was allowed to use FMLA leave and come in late when she had migraine headaches, even following the meeting with Santilli, and she was placed in the stockroom and paid at her SSR rate after she injured her ankle. (SUF ¶¶ 41, 48.) Therefore,

12

1  Defendant is granted summary judgment on Plaintiff's failure to
2  accommodate claim.
3       FEHA also imposes a duty on the employer "to engage in a
4  timely, good faith, interactive process with the employee . . . [for the
5  purpose of] determin[ing] effective reasonable accommodations, if any,
6  in response to a request for reasonable accommodation by an employee .
7  . . with a known physical or mental disability." CAL. GOV'T CODE §
8  12940(n). "The interactive process requires communication and good-faith
9  exploration of possible accommodations between employers and individual
10 employees with the goal of identifying an accommodation that allows the
11 employee to perform the job effectively." Dep't of Fair Emp't and Hous.
12 v. Lucent Technologies, Inc., --- F.3d ----, 2011 WL 1549232, *7 (9th
13 Cir. 2011) (quoting Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal.
14 App. 4th 952, 83 (2008)).
15      Plaintiff argues Defendant failed "[t]o fulfill its
16 interactive process duty" since it terminated her "instead of
17 considering her for any other position[.]" (Opp'n 14:8, 11-12.) However,
18 it is undisputed that Plaintiff was provided an accommodation for her
19 migraines and her ankle injury. (SUF ¶¶ 41, 48.) Further, Defendant was
20 not required to engage in the interactive process after Plaintiff's
21 position was terminated due to a reduction in Defendant's workforce.
22 Therefore, Defendant is granted summary judgment on Plaintiff's failure
23 to engage in the interactive process claim.

24      **C.   Retaliation**

25      Defendant also seeks summary judgment on Plaintiff's FEHA
26 retaliation claim, arguing "Plaintiff cannot establish a prima facie
27 case of retaliation." (Mot. 20:17-18.) Defendant argues there is no
28 connection between Plaintiff's termination and "any so-called protected

activity-be it exercising her FMLA leave [for her migraine headaches] or worker's compensation benefits [for her ankle injury.]" (Reply 10:19-20; Mot. 20:13-18.) Plaintiff counters that Defendant's stated reason for terminating her is a pretext and "[t]here is an abundance of evidence that Plaintiff was retaliated against due to her request for FMLA leave, her subsequent injury to her ankle and her decision to take worker's compensation benefits." (Opp'n 15:24-26.)

To establish a prima facie case of retaliation, a plaintiff must show: (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. Vasquez v. County of L.A., 349 F.3d 634, 646 (9th Cir. 2003). "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).

Even assuming, *arguendo*, that Plaintiff could make out a prima facie case, Plaintiff has not raised a triable issue that Defendant's proffered reason for terminating her was a pretext for prohibited retaliation. Therefore, Defendant's motion for summary judgment on Plaintiff's retaliation claim is granted.

**D.   Wrongful Termination in Violation of Public Policy**

Defendant seeks summary judgment on Plaintiff's wrongful termination in violation of public policy claim, arguing "[s]ince the Plaintiff cannot establish a prima facie case of . . . disability discrimination or retaliation under FEHA, she cannot establish a claim for wrongful termination in violation of public policy under FEHA." (Mot. 22:17-19.) Plaintiff counters her "wrongful termination in

violation of public policy claim is based on the policies set forth in the FEHA that prohibit discrimination and retaliation on the basis of disability discrimination." (Opp'n 15:3-5.)

"To state a prima facie wrongful discharge claim, a plaintiff must establish: (1) an employer-employee relationship; (2) that plaintiff's termination was a violation of public policy; (3) causation; and (4) damages." Ujagar v. Campbell's Soup Co., No. CIV. S-05-674 LKK/DAD, 2006 WL 3762106, at * 6 (E.D. Cal. Dec. 20, 2006) (citing Holmes v. General Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n.8 (1993)). Disability discrimination in violation of FEHA is a "violation of public policy" upon which a common law tort claim for wrongful discharge can be based. City of Moorpark v. Sup. Ct., 18 Cal. 4th 1143, 1159-61 (1998).

Since Plaintiff has failed to raise a genuine issue of material fact with respect to her FEHA claims, her wrongful termination claim also fails. See Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 229 (1999) (stating "because [Plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails"). Therefore, Defendant's motion for summary judgment on Plaintiff's wrongful termination claim is granted.

E.   **Intentional Infliction of Emotional Distress**

Defendant also seeks summary judgment on Plaintiff's intentional infliction of emotional distress ("IIED") claim, arguing that Plaintiff has not shown that Defendant engaged in any "extreme and outrageous conduct causing severe emotional distress." (Mot. 27:12.)

"Under California law, to make out a cause of action for intentional infliction of emotional distress, a plaintiff must show, in relevant part, that the defendant engaged in extreme and outrageous

conduct that exceeded the bounds of what is generally tolerated in a civilized society." Braunling v. Countrywide Home Loans, Inc., 220 F.3d 1154, 1158 (9th Cir. 2000). "[T]erminat[ing an employee] may or may not be outrageous conduct depending on the surrounding circumstances." Maffei v. Allstate Cal. Ins. Co., 412 F. Supp. 2d 1049, 1057 n.4 (E.D. Cal. 2006). "Terminating an employee for improper or discriminatory reasons . . . is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress." Walker v. Boeing Corp., 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002) (citing Janken v. GM Hughes Elec., 46 Cal. App. 4th 55, 80 (1996)); see also Metoyer v. Chassman, 248 Fed. Appx. 832, 835 (9th Cir. 2007) (stating Plaintiff's "allegations that she was improperly terminated [for discriminatory and retaliatory reasons] simply do not make out a claim of intentional infliction of emotional distress"). However, a termination may be outrageous if the plaintiff was also "insulted, degraded, yelled at, physically threatened, . . . publicly humiliated," or the target of "racial slurs," or when the employment decision was "based on [the plaintiff's] personal life" unrelated to work. Helgeson v. Am. Int'l Group, Inc., 44 F. Supp. 2d 1091, 1096 (C.D. Cal. 1999) (compiling cases so holding).

Plaintiff has not presented evidence from which a reasonable inference could be drawn that her termination satisfies this element of her IIED claim. Therefore, Defendant's motion for summary judgment on Plaintiff's IEID claim is granted.

**F. Remaining Claims**

Defendant also seeks summary judgment on Plaintiff's gender discrimination claim, arguing, *inter alia*, "Plaintiff cannot establish a prima facie case of gender discrimination." (Mot. 13:7-8.) Further,

Defendant seeks summary judgment on Plaintiff's breach of an implied contract of continued employment claim, "[s]ince Plaintiff was . . . an at will employee[.]" Id. 25:14. Defendant also seeks summary judgment on Plaintiff's breach of the implied covenant of good faith and fair dealing arguing Defendant "did not enter into any contract express or implied that altered the at-will status of Plaintiff's employment." Id. 26:4-5.

Plaintiff states in her opposition that she "does not dispute Defendant's motion as it relates to Plaintiff's claims of gender discrimination, breach of implied contract of continued employment, or breach of implied covenant of good faith and fair dealing." (Opp'n 8:12-14.) Therefore, Defendant's motion for summary judgment on these claims is granted.

## V. CONCLUSION

For the stated reasons, Defendant's motion for summary judgment is GRANTED and judgment shall be entered in favor of Defendant.

Dated: October 7, 2011

_____
GARLAND E. BURRELL, JR.
United States District Judge