IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KATHLEEN STEWART,                        )
                                         )    2:10-cv-01648-GEB-KJN
                Plaintiff,               )
                                         )
        v.                               )    ORDER GRANTING SUMMARY
                                         )    JUDGMENT IN PART; DENYING
CINTAS CORPORATION NO. 3,                )    SUMMARY JUDGMENT IN PART; AND
                                         )    SCHEDULING FINAL PRETRIAL
                Defendant.               )    CONFERENCE AND TRIAL
_____          )

        Pending is Defendant's motion for summary judgment since
Plaintiff's motion for reconsideration of the summary judgment ruling in
Defendant's favor was granted. Defendant seeks summary judgment on all
claims in Plaintiff's Complaint; the claims concern Plaintiff's
termination from employment with Defendant. (ECF No. 21.) Plaintiff
opposes the motion.

## I.  LEGAL STANDARD

        A party seeking summary judgment bears the initial burden of
demonstrating the absence of a genuine issue of material fact for trial.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is
'material' when, under the governing substantive law, it could affect
the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust &
Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material

fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When the defendant is the moving party and is seeking summary judgment on one or more of a plaintiff's claims,

> [The defendant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [defendant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [defendant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted). If the moving party satisfies its initial burden, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation and internal quotation marks omitted). The "non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (citation and internal quotation marks omitted).

Further, Local Rule 260(b) requires:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the

1           particular portions of any pleading, affidavit,
        deposition, interrogatory answer, admission, or
2           other document relied upon in support of that
        denial.
3

4   If the nonmovant does not "specifically . . . [controvert duly

5   supported] facts identified in the [movant's] statement of undisputed

6   facts," the nonmovant "is deemed to have admitted the validity of the

7   facts contained in the [movant's] statement." <u>Beard v. Banks</u>, 548 U.S.

8   521, 527 (2006).

9           Because a district court has no independent duty to
        scour the record in search of a genuine issue of
10          triable fact, and may rely on the nonmoving party
        to identify with reasonable particularity the
11          evidence that precludes summary judgment, . . . the
        district court . . . [is] under no obligation to
12          undertake a cumbersome review of the record on the
        [nonmoving party's] behalf.
13

14  <u>Simmons v. Navajo Cnty., Arizona</u>, 609 F.3d 1011, 1017 (9th Cir. 2010)

15  (citation and internal quotation marks omitted).

16          Evidence must be viewed "in the light most favorable to the

17  non-moving party," and "all reasonable inferences" that can be drawn

18  from the evidence must be drawn "in favor of [the non-moving] party."

19  <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1222-23 (9th Cir. 2010).

20  **II. UNCONTROVERTED FACTS**

21          Defendant "processes, distributes, and delivers corporate-

22  identity work uniforms as well as facility services products[.]"

23  (Statement of Undisputed Facts ("SUF") ¶ 1.) Defendant "employs Service

24  Sales Representatives ('SSR') to service its customers by delivering

25  clean uniforms and other industrial products to a customer's business

26  and also picking up soiled garments for laundry, repair or replacement."

27  <u>Id.</u> ¶ 2. "Typically, each SSR is assigned a particular customer route

28  that he or she services each week in order to develop continuing

customer relationships with [Defendant's] customers." Id. "Plaintiff was employed by [Defendant] as an SSR, servicing a route, from September 8, 2003 until August 3, 2009." Id. ¶ 8. In 2006, Plaintiff "transferred . . . to [Defendant's] Sacramento, California facility #622 (hereinafter 'Location 622')[.]" Id. ¶ 10.

"Plaintiff suffers from debilitating migraines . . . ." (Pl.'s Separate Statement of Undisputed and Additional Material Facts ("AUF") ¶ 2.) Plaintiff's migraines occasionally made her late for work because she had to wait for her medication to effectively minimize her symptoms. Id. "On November 20, 2008, Plaintiff made a request to [Defendant's] third party administrator for leave under the [Family Medical Leave Act ('FMLA')]" and in "a letter dated February 13, 2009," Plaintiff's "request for intermittent FMLA leave [was] approved from January 26, 2009 through January 26, 2010." (SUF ¶¶ 28, 30.) "Prior to making any formal request for FMLA leave . . . , [Defendant] had permitted Plaintiff to arrive late to work on account of her migraines." Id. ¶ 31.

"On January 27, 2009, Plaintiff received a verbal warning based on failure to service customers during regular business hours and related customer complaints." (SUF ¶ 22.) The warning states, "Shortly after we went to our new schedule of four ten[-]hour days, [Jacqueline] Mack and I had a discussion with you regarding finishing your route days at an appropriate time, [and] servicing all customers during regular business hours . . . ." (AUF ¶ 7; Stewart Dep. Ex. 24; Stewart Dep. 76:21-25.) The warning further states, "My expectation is that you will have all customers serviced by 5 PM daily. You need to be checked in and out of the plant at a reasonable time also, within 90 minutes of finishing servicing your customers, i.e., 6:30 PM." (AUF ¶ 7; Stewart Dep. Ex. 24.)

"As a solution to the customer service issues, Plaintiff proposed an accommodation [where] . . . another SSR [would] begin Plaintiff's route on days whe[n] she could not arrive at work on time and then [she would] . . . meet that SSR on the route once she arrived at work." (SUF ¶ 39; AUF ¶ 20.) However, Defendant said it "didn't want to do that," without explanation. (Stewart Dep. 116:25-117:2; AUF ¶ 20.) Defendant objects to this "fact" on the grounds that it "lacks foundation, and is conclusory." (Def.'s Objections to Pl.'s AUF ¶ 20.) However, this objection is overruled since Plaintiff's account of this conversation with her managers is uncontroverted.

"In February 2009, Plaintiff met with Mack, [the Human Resources Manager,] Grizelda Torrao, General Manager . . . at that time, Scott Wallace, Service Director, Scott Tricomo, Service Manager and Plaintiff's direct supervisor, and Elizabeth Santilli, a Regional Human Resources representative, to discuss performance deficiencies and to engage in additional dialogue related to possible accommodations." (SUF ¶ 34.) "At the time of the February 2009 meeting, [Defendant] had received . . . customer complaints related to Plaintiff servicing customers after they were closed or leaving product at the customer's back door." Id. ¶ 35.

"Plaintiff alleges that . . . Santilli told her that she would be fired if she showed up late to work again." (SUF ¶ 40.) "Santilli specified [to Plaintiff] that the position of SSR required a certain start time." (AUF ¶ 19.) Plaintiff testified that Santilli "stated that if I couldn't come to work on time and do the job that I was hired to do, that [Defendant] did not have any other positions for me, and they would -- that it was a bad time to be out of work." (Stewart Dep. 114:23-115:1.) Plaintiff also testified that Santilli "said there were

5

others in the plant with worse conditions than mine that were able to make it to work on time." Id. 115:14-16. In response, "Plaintiff told [Defendant] that her tardiness was the result of migraine headaches and a change in medication from [injectable] form to tablet form." (SUF ¶ 37.)

After the February 2009 meeting, Santilli contacted Plaintiff's supervisors "to see if [Plaintiff's] start times had improved." (Tricomo Dep. 31:13-15.) Plaintiff "continued to [use her approved FMLA leave to] come in late when she experienced a migraine headache," but "for the most part her start times improved." (SUF ¶ 41; Tricomo Dep. 31:10.) "The February 2009 meeting with Santilli is the only time Plaintiff alleges she was told she would be fired for showing up late." (SUF ¶ 40.) Santilli "was not involved in conducting the [workforce reduction]" at Location 622 and she was not a "decision-maker with respect to" Plaintiff's termination when Plaintiff's route was eliminated. (Santilli Decl. ¶¶ 3-4; SUF ¶ 42.)

"Plaintiff injured her ankle on June 15, 2009 while servicing her route." (SUF ¶ 43.) "On June 16, 2009, Plaintiff filed a claim for worker's compensation based on her ankle injury." Id. ¶ 44. "During her treatment and recovery from her ankle injury, Plaintiff was relocated to [Defendant's] stockroom based on her medical restrictions but was compensated at her SSR rate of pay." Id. ¶ 45. "[T]here was nothing that [Plaintiff] requested from [Defendant] that it did not provide while her ankle was healing." Id. ¶ 48.

"In early-2009, General Manager . . . Doyle Denny, determined that seven positions needed to be eliminated in the service department due to high labor costs as a percentage of sales and other economic indicators." Id. ¶ 50. "As part of this general restructuring of the

service department, [Defendant] terminated a customer service representative and a route check-in coordinator prior to July 2009. These terminations were conducted based on seniority." Id. ¶ 51. Defendant then "engaged in a re-route of all customer routes at the location at that time (hereinafter, 'the [route reorganization]') in order to reduce the number of routes at the location." Id. ¶ 53. To conduct the route reorganization, Defendant brought in Matthew Feller, an employee from the regional office, who "utilized a software program, 'Territory Pro.'" (SUF ¶¶ 54-55.) "Territory Pro is designed to calculate optimized sales, service, and delivery territories based on constraints such as sales volume, service time and coverage area." Id. ¶ 56.

Plaintiff's route, Route 25, was eliminated when the routes were reorganized and she "was terminated on August 3, 2009." Id. ¶ 63. Plaintiff was given a letter stating her "employment will end as a result of a reduction in work force and not due to any fault of her own." (AUF ¶ 26.) Route 75 was eliminated at the same time as Plaintiff's route and the SSR assigned to Route 75, Joel Roberts, was also terminated. (SUF ¶¶ 61-62.) At least one other route was also eliminated, and the SSR, Nick Brinkley, was terminated. (Tricomo Dep. 43:1-9.) In addition, two SSRs who had been training with Cintas for "three months or so" ("SSRs-in-training") were assigned to routes after the route reorganization. (Stewart Dep. 124:16-126:1.) The SSR assigned to Route 17, Anthony White, was terminated for stealing before the route reorganization and service managers took turns covering his route until the route reorganization. (Tricomo Dep. 40:24-41:2, 41:17-23, 44:12-23.)

"According to [Defendant's] employee handbook[,] . . . if there are Work Force Reductions, 'the company will make every reasonable

effort to place [employees] in other positions or departments. If this isn't practical, [employees] may be terminated.'" (AUF ¶ 21.) "Plaintiff admits that she was not involved in the restructuring and elimination of routes as part of the [route reorganization] and does not know the selection criteria." (SUF ¶ 65.)

## III. EVIDENTIARY OBJECTION

The parties dispute whether a supplemental declaration Plaintiff has filed in opposition to Defendant's summary judgment motion should be considered. Defendant argues the supplemental declaration should be excluded under Federal Rules of Evidence 602, 701, and 702, because Plaintiff "readily admits to no knowledge of the Territory Pro software from which the spreadsheets were produced" and "[a]s such, she has no basis to claim the information contained in these distinct documents, created by different systems and used for different purposes, are 'the same.'" (Def.'s Opp'n to Pl.'s Mot. for Reconsideration 13:4-8.) However, Plaintiff declares in her supplemental declaration:

> 5. In the course of my employment at Cintas, I received training from Cintas regarding how to interpret route sales sheets and information on [route reorganization] proposals. Accurate interpretation of such items was necessary for me to execute my job duties properly. . . .
>
> 6. This route sales sheet included the same information that was included in the [route reorganization] spreadsheets produced by Defendant . . . . Because of my familiarity with the route sales sheets, I understood the information presented in [the] [route reorganization] proposal produced by Cintas. It is evident from the [route reorganization] proposal produced by Cintas that Route 17 was not eliminated because Route 17 appears on pages CI001433 through CI001435 . . . .
>
> 7. The [route reorganization] proposal . . . contains headings . . . on the first page of "OrigRt," "OrigSeq," and "TerrRtSeq." I know from my experience working with Cintas and interpreting route sheets that "OrigRt" mean[s] the original route number, "OrigDay" means the day that route

was worked, and "OrigSeq," means the order of that
particular stop. The column entitled "TerrRtSeq"
contains the new route number and the sequence, or
day in which the route was to be worked.

8. Route 17 appears in the "TerrRtSeq" column
and Route 35 does not.

(Stewart Decl. in Support of Mot. for Reconsideration ("Supplemental

Stewart Decl.") ¶¶ 5-8.) Therefore, Defendant's objection is overruled

since Plaintiff has sufficiently shown that the inferences and opinions

in her supplemental declaration to which Defendant objects concern

matters involving her employment experience with Defendant.

**IV. DISCUSSION**

**A.   Disability Discrimination**

Defendant seeks summary judgment on Plaintiff's disability

discrimination claim which is alleged under the California Fair

Employment and Housing Act ("FEHA"), arguing Plaintiff "fails to

establish a prima facie case of disability discrimination." (Def.'s Mot.

for Summ. J. ("Mot.") 16:13-19.) Defendant concedes "for purposes of

this motion only . . . that Plaintiff has stated a disability as that

term is defined in FEHA." (Mot. 15 n.2.)

"When [considering] motions for summary judgment in employment

discrimination cases arising under state law, federal courts sitting in

diversity must apply the McDonnell Douglas burden-shifting scheme as a

federal procedural rule." Zeinali v. Raytheon Co., 636 F.3d 544, 552

(9th Cir. 2011) (internal quotation marks and citation omitted).

In order to defeat a defendant's motion for summary
judgment on a discrimination claim: The employee
must first establish a prima facie case of
discrimination. If [s]he does, the employer must
articulate a legitimate, nondiscriminatory reason
for the challenged action. Finally, if the employer
satisfies this burden, the employee must show that
the reason is pretextual[,] either directly by
persuading the court that a discriminatory reason
more likely motivated the employer or indirectly by

9

1                     showing that the employer's proffered explanation
2                     is unworthy of credence.

3 Id. (citation and internal quotation marks omitted).

4        To establish a prima facie case of disability discrimination

5 under FEHA, Plaintiff must show: "(1) [s]he suffers from a disability;

6 (2) [s]he is otherwise qualified to do h[er] job; and, (3) [s]he was

7 subjected to adverse employment action because of h[er] disability."

8 Faust v. Cal. Portland Cement Co., 150 Cal. App. 4th 864, 886 (2007).

9 "The McDonnell Douglas test merely requires that a plaintiff raise an

10 inference of disparate treatment to establish a prima facie case, not

11 actual proof of such treatment." Warren v. City of Carlsbad, 58 F.3d

12 439, 442 (9th Cir. 1995).

13        Defendant argues Plaintiff "cannot show any causal link

14 between her alleged disability and the subsequent termination of her

15 employment when her route was eliminated." (Def.'s Mot. for Summ. J.

16 ("Mot.") 16:5-7.) Plaintiff counters that as a result of her migraine

17 headaches and her use of FMLA leave, "she was called into a meeting with

18 various supervisors and human resource representatives and told that she

19 must come to work at a specified time, despite her need for a reasonable

20 accommodation, or she would lose her job." (Opp'n 9:1-4.) Plaintiff also

21 argues, "Defendant disregarded its own policy as to Plaintiff by failing

22 to find her another position within the company[,] . . . evidencing a

23 discriminatory motive." (Opp'n 9:10-12.)

24        Defendant argues that Plaintiff was terminated solely because

25 of workforce reduction, which was effectuated through "re-organized

26 routes based on geography and customer data base information." (Mot.

27 1:17.) Defendant avers that "three routes were eliminated [as a result

28 of the reorganized routes]: Route 17, Route 25 and Route 75," and "[t]he

SSRs assigned to . . . [those routes] were terminated and/or not replaced . . . ." (Louis Aff. ¶¶ 8-9; Feller Aff. ¶ 12.) Defendant argues, "Plaintiff was treated the same as the other SSRs whose routes were eliminated—her employment was terminated." (Reply 7:27-28; Mot. 17:13-14.) Defendant also argues that it "had no open positions for [Plaintiff]" after the routes were reorganized, because Defendant "had no positions for anyone." (Reply 9:1, 9:19-27; Denny Dep. 69:1-5.)

However, Plaintiff presents evidence that Roman Amundson, the SSR previously assigned to Route 35, was not terminated when his route was eliminated during the route reorganization. (Supplemental Stewart Decl. ¶¶ 8, 11; Keister Decl. in Support of Opp'n to Summ. J. Ex. 5.4 p.24; Stewart Dep. 125:9-16, 126:17-19.) Since "an inference of discrimination is raised where the terminated employee can show that others not in the protected class were treated more favorably [than Plaintiff]," Plaintiff's evidence that Amundson was not terminated is sufficient to establish Plaintiff's prima facie case of disability discrimination. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1422-23 (9th Cir. 1990).

Defendant also argues: "Even assuming . . . that Plaintiff could establish a prima facie case of disability discrimination, [Plaintiff] cannot show specific and substantial evidence that [Defendant's] proffered nondiscriminatory reason for terminating her employment—that her route had been eliminated—is pretext for disability discrimination." (Mot. 16:16-19.) To show pretext using circumstantial evidence, "[P]laintiff must produce specific and substantial evidence" that the employer's asserted reasons for termination are "unworthy of credence because they are internally inconsistent or otherwise not believable." Foster v. City of Oakland, 649 F. Supp, 2d 1008, 1020 (N.D.

11

1  Cal. 2009) (citing <u>Chuang v. Univ. of Cal. Davis</u>, 225 F.3d 1115, 1127
2  (9th Cir. 2000). In addition, "a plaintiff can survive summary judgment
3  without producing evidence of discrimination beyond that constituting
4  his prima facie case, if that evidence raises a genuine issue of
5  material fact regarding the truth of the employer's proffered reasons."
6  <u>Chuang</u>, 225 F.3d at 1127.

7       Here, Plaintiff has presented evidence from which a reasonable
8  inference can be drawn that Amundson was not terminated, which "raises
9  a genuine issue of material fact regarding the truth of [Defendant's]"
10 averment that "Plaintiff was treated the same as the other SSRs whose
11 routes were eliminated—her employment was terminated." (Reply 7:27-28;
12 Mot. 17:13-14; <u>Chuang</u>, 225 F.3d at 1127.) Plaintiff also presented
13 evidence that routes were available for assignment after the route
14 reorganization occurred, which raises a genuine issue of material fact
15 regarding the truth of Defendant's averment that Defendant "had no
16 positions for anyone" following the route reorganization. (Stewart Dep.
17 124:16-126:1, 137:17-19; Denny Dep. 69:1-5.)

18      Further, the employee handbook indicates that "'the company
19 will make every reasonable effort to place [employees] in other
20 positions or departments'" in the case of workforce reductions. (AUF ¶
21 21.) Defendant's General Manager, Doyle Denny, was asked during his
22 deposition how this policy was applied to Plaintiff, and he responded,
23 "[Defendant] had no open positions." (Denny Dep. 67:21-68:25.) Since
24 Plaintiff's evidence is sufficient to support drawing a reasonable
25 inference that Defendant did have open positions after the
26 reorganization, Plaintiff's evidence undermines Defendant's stated
27 reason for terminating Plaintiff. Therefore, summary judgment on
28 Plaintiff's disability discrimination claim is denied.

**B.    Failure  to  Accommodate  and  Failure  to  Engage  in  the
Interactive Process**

Defendant also seeks summary judgment on Plaintiff's FEHA claims in which Plaintiff alleges Defendant failed to reasonably accommodate her and failed to engage in the interactive process, as prescribed in California Government Code section 12940, subsections (m) and (n). (Mot. 17:17-18.) Defendant argues the undisputed evidence demonstrates it accommodated Plaintiff's disabilities and engaged in the interactive process. Id. 18:7-24, 19:6-20:2.

FEHA proscribes an employer from "fail[ing] to make reasonable accommodation for the known physical or mental disability of an . . . employee." CAL. GOV'T CODE § 12940(m). "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." Scotch v. Art Inst. of Cal.-Orange Cnty., Inc., 173 Cal. App. 4th 986, 1009-10 (2009). FEHA also imposes a duty on the employer "to engage in a timely, good faith, interactive process with the employee . . . [for the purpose of] determin[ing] effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability." CAL. GOV'T CODE § 12940(n). "The duties of employers under [sections] 12940(m) and 12940(n) are inextricably linked." Kelley v. Corrections Corp. of Am., 750 F. Supp. 2d 1132, 1140 (E.D. Cal. 2010). Therefore,

> "[an] employer cannot prevail on summary judgement
> on a claim of failure to reasonably accommodate
> unless it establishes through undisputed facts that
> (1) reasonable accommodation was offered and
> refused; (2) there simply was no vacant position
> within the employer's organization for which the

1                          disabled employee was qualified and which the
disabled employee was capable of performing with or
2       without accommodation; or (3) the employer did
everything in its power to find a reasonable
3       accommodation, but the informal interactive process
broke down because the employee failed to engage in
4       discussions in good faith."

5  Id. at 1141 (quoting Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245,

6  255-56 (2000)).

7            Plaintiff argues she was denied a reasonable accommodation for

8  her ankle injury since she was terminated instead of being reassigned to

9  another route or allowed to continue working in the stockroom. (Opp'n

10  13:11-17.) However, the undisputed evidence demonstrates that Plaintiff

11  was placed in the stockroom and paid at her SSR rate as an accommodation

12  for her ankle injury. (SUF ¶ 45; Stewart Dep. 123:14-18.) Therefore,

13  Plaintiff has failed to raise a genuine issue of material fact regarding

14  whether Defendant provided a reasonable accommodation for Plaintiff's

15  ankle injury until Plaintiff's termination.

16            Plaintiff argues she was denied a reasonable accommodation for

17  her migraine headaches "when Santilli informed Plaintiff that

18  [Defendant] would not allow her to come in later than the specified

19  start time." (Opp'n 13:5-6.) Defendant counters that it "allowed

20  Plaintiff to continue arriving late to work to giv[e] her time for her

21  migraines to resolve when they occurred." (Mot. 18:21-23.) However, it

22  is uncontroverted that Defendant rejected Plaintiff's request to start

23  her shift later on days she had headaches, required Plaintiff to finish

24  her route by 5 p.m., and threatened to terminate Plaintiff's employment

25  if Plaintiff continued to be late. (Stewart Dep. 116:25; Stewart Dep.

26  Ex. 24; AUF ¶ 20; SUF ¶ 40; Stewart Dep. 114:23-115:1.) Santilli also

27  followed up with Plaintiff's supervisors "to see if [Plaintiff's] start

28  times had improved." (Tricomo Dep. 31:13-15.) It can be reasonably

inferred from this evidence that Defendant "failed to reasonably accommodate [Plaintiff's] [migraine headaches]." <u>Scotch</u>, 173 Cal. App. 4th at 1009-10.

Plaintiff also argues Defendant failed "[t]o fulfill its interactive process duty" since it terminated her "instead of considering her for any other position[.]" (Opp'n 14:8, 14:11-12.) Defendant counters that there were no available positions when Plaintiff's route was eliminated. (Reply 9:22-23.) However, Plaintiff has presented evidence from which it be could reasonably be inferred that three routes existed after the reorganization to which SSRs could have been assigned. (Stewart Dep. 124:1-125:23.) Therefore, a genuine issue of material fact exists regarding whether there was a "vacant position within the employer's organization for which [Plaintiff] was qualified and which [Plaintiff] was capable of performing with or without accommodation." <u>Kelley</u>, 750 F. Supp. 2d at 1141. Therefore, summary judgment on this claim is denied.

**C.   Retaliation**

Defendant also seeks summary judgment on Plaintiff's FEHA retaliation claim, arguing "Plaintiff cannot establish a prima facie case of retaliation." (Mot. 20:17-18.) Defendant argues there is no connection between Plaintiff's termination and "any so-called protected activity—be it exercising her FMLA leave [for her migraine headaches] or worker's compensation benefits [for her ankle injury.]" (Reply 10:19-20; Mot. 20:13-18.) Plaintiff counters that Defendant's stated reason for terminating her is a pretext and "[t]here is an abundance of evidence that Plaintiff was retaliated against due to her request for FMLA leave, her subsequent injury to her ankle and her decision to take worker's compensation benefits." (Opp'n 15:24-26.)

To establish a prima facie case of retaliation, a plaintiff must show: (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. Vasquez v. Cnty of L.A., 349 F.3d 634, 646 (9th Cir. 2003). "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). "The McDonnell Douglas order and allocation of proof that governs [disability discrimination] claims also governs retaliation claims." Id. at 1375.

Here, Plaintiff has "proffered sufficient facts so that a reasonable trier of fact could find that [Defendant's] explanation of its actions was merely a pretext for discrimination." Strother v. Southern California Permanente Med. Group, 79 F.3d 859, 868 (9th Cir. 1996). Therefore, Defendant's motion for summary judgment on Plaintiff's retaliation claim is denied.

**D.   Wrongful Termination in Violation of Public Policy**

Defendant seeks summary judgment on Plaintiff's wrongful termination in violation of public policy claim, arguing "[s]ince the Plaintiff cannot establish a prima facie case of . . . disability discrimination or retaliation under FEHA, she cannot establish a claim for wrongful termination in violation of public policy under FEHA." (Mot. 22:17-19.) Plaintiff counters her "wrongful termination in violation of public policy claim is based on the policies set forth in the FEHA that prohibit discrimination and retaliation on the basis of disability discrimination." (Opp'n 15:3-5.)

1    Disability discrimination in violation of FEHA is a "violation
2    of public policy" upon which a common law tort claim for wrongful
3    discharge can be based. City of Moorpark v. Sup. Ct., 18 Cal. 4th 1143,
4    1159-61 (1998). Since genuine issues of material fact exist regarding
5    Plaintiff's FEHA claims, summary judgment on her wrongful termination
6    claim is denied.

7    **E.    Intentional Infliction of Emotional Distress**

8    Defendant also seeks summary judgment on Plaintiff's
9    intentional infliction of emotional distress ("IIED") claim, arguing
10   Plaintiff has not shown that Defendant engaged in any "extreme and
11   outrageous conduct causing severe emotional distress." (Mot. 27:12.)

12   "Under California law, to make out a cause of action for
13   intentional infliction of emotional distress, a plaintiff must show, in
14   relevant part, that the defendant engaged in extreme and outrageous
15   conduct that exceeded the bounds of what is generally tolerated in a
16   civilized society." Braunling v. Countrywide Home Loans, Inc., 220 F.3d
17   1154, 1158 (9th Cir. 2000). "Terminating an employee for improper or
18   discriminatory reasons . . . is insufficiently extreme or outrageous to
19   give rise to a claim for intentional infliction of emotional distress."
20   Walker v. Boeing Corp., 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002)
21   (citing Janken v. GM Hughes Elec., 46 Cal. App. 4th 55, 80 (1996)); see
22   also Metoyer v. Chassman, 248 Fed. Appx. 832, 835 (9th Cir. 2007)
23   (stating Plaintiff's "allegations that she was improperly terminated
24   [for discriminatory and retaliatory reasons] simply do not make out a
25   claim of intentional infliction of emotional distress"). However, a
26   termination may be outrageous if the plaintiff was also "insulted,
27   degraded, yelled at, physically threatened, . . . publicly humiliated,"
28   or the target of "racial slurs," or when the employment decision was

"based on [the plaintiff's] personal life" unrelated to work. <u>Helgeson</u>
<u>v. Am. Int'l Group, Inc.</u>, 44 F. Supp. 2d 1091, 1096 (C.D. Cal. 1999)
(compiling cases so holding).

Plaintiff has not presented evidence from which a reasonable
inference could be drawn that her termination satisfies this element of
her IIED claim. Therefore, Defendant's motion for summary judgment on
Plaintiff's IIED claim is granted.

**F.   Remaining Claims**

Defendant also seeks summary judgment on Plaintiff's gender
discrimination claim, arguing, *inter alia*, "Plaintiff cannot establish
a prima facie case of gender discrimination." (Mot. 13:7-8.) Further,
Defendant seeks summary judgment on Plaintiff's breach of an implied
contract of continued employment claim, "[s]ince Plaintiff was . . . an
at will employee[.]" <u>Id.</u> 25:14. Defendant also seeks summary judgment on
Plaintiff's breach of the implied covenant of good faith and fair
dealing claim, arguing Defendant "did not enter into any contract
express or implied that altered the at-will status of Plaintiff's
employment." <u>Id.</u> 26:4-5.

Plaintiff states in her opposition that she "does not dispute
Defendant's motion as it relates to Plaintiff's claims of gender
discrimination, breach of implied contract of continued employment, or
breach of implied covenant of good faith and fair dealing." (Opp'n 8:12-
14.) Therefore, Defendant's motion for summary judgment on these claims
is granted.

**V. CONCLUSION**

For the stated reasons, Defendant's motion for summary
judgment is denied on Plaintiff's claims for disability discrimination,
failure to make reasonable accommodations and failure to engage in the

interactive process, retaliation, and wrongful discharge in violation of public policy. Defendant's motion is granted on Plaintiff's claims for IIED, gender discrimination, breach of implied contract of continued employment, and breach of implied covenant of good faith and fair dealing.

Trial shall commence at 9:00 a.m. on February 19, 2013. The final pretrial conference is scheduled for November 26, 2012 at 11 a.m.

Dated:   January 9, 2012

GARLAND E. BURRELL, JR.
United States District Judge